## CASH-A-CHECK OF SOUTH FLORIDA, INC. v SUNSHINE ELECTRICAL CONTRACTORS, INC.

Case No. MS-87-8458-RF

County Court, Palm Beach County, Florida

December 2, 19877

**APPEARANCES OF COUNSEL**

Cash-A-Check of South Florida, Inc., pro se.

Sunshine Electrical Contractors, Inc., pro se.

17

## OPINION OF THE COURT

ROBERT M. GROSS, County Judge.

This case came before the Court for non-jury trial on August 26, 1987. Plaintiff and Defendant were present and the Court heard sworn testimony and received documents into evidence. Based on the evidence presented, the Court makes findings of fact and draws the following conclusions of law.

On Saturday morning, May 2, 1987, Frank Nicastro arranged with Defendant's President, Edwin Cowart, to sell some electrical goods. After Cowart inspected the goods, he offered Nicastro $350.00 for them. Nicastro indicated that he needed cash. Cowart agreed to pay $120.00 in cash. For the remaining balance, Cowart wrote check number 8518 on the corporate account for $230.00. Coward gave Nicastro the check at 10:30 a.m.

At 1:00 p.m., Nicastro telephoned Cowart and said that someone had stolen his wallet with the check in it. Nicastro said he needed the money and he asked Cowart to write another check. Cowart said he would go to his bank and stop payment on the check on Monday morning.

Later on that same Saturday afternoon, Nicastro presented check number 8518 for payment at Plaintiff's place of business. Plaintiff is in the business of cashing checks, charging a percentage of the face amount of each check as its fee. For identification, Nicastro presented his Florida driver's license. As a reference, Nicastro gave his mother's name. Plaintiff's clerk contacted Nicastro's mother, who indicated in some vague fashion that Nicastro had some dealings with Defendant. She knew nothing specific about this transaction. Plaintiff made no attempt to contact Defendant. After deducting a 6% service charge, Plaintiff cashed the check for Nicastro.

On Monday, May 4, Plaintiff deposited check number 8518 at its bank. At 10:05 a.m., Cowart went to his bank and paid $20.00 to stop payment on check 8518. That evening, Nicastro called Cowart and asked for another check to replace the one which he claimed had been lost. Cowart told Nicastro to wait until Wednesday, May 6, because he wanted to make sure that the check had not been cashed inadvertently. On the afternoon of Thursday, May 7, Cowart called his bank at 4:00 p.m. and verified that check 8518 had not yet been presented for payment. After that call, Cowart wrote Nicastro a new check on the corporate account in the amount of $210.00, which included a deduction for the $20.00 stop payment charge.

18

Check number 8518 was presented for payment at Defendant's bank on May 8 and payment was refused because of the stop payment request. On the same day, Nicastro cashed the second check for $210.00 at Defendant's bank.

The issue before the Court is whether Plaintiff may look to Defendant to recover its loss. As the drawer of the check, Defendant is under a contractual responsibility to pay the amount of the draft to Plaintiff, the holder of the check. § 673.413(2), Fla. Stat. (1985). The fact that Defendant stopped payment on the check does not rescind this contractual liability to a holder. § 674.403, F.S.A., Comment 8 (1966). If Plaintiff is classified as a holder in due course of the check, it would take the check free of the defense that Nicastro fraudulently induced the issuance of a second check. *See,* § 673.305(2), Fla. Stat. (1985); *Seinfeld v. Commercial Bank and Trust Company,* 405 So.2d 1039, 1040, n. 1 (Fla. 3d DCA 1981). In this case, Plaintiff would qualify as a holder in due course if it cashed the check "in good faith" and without notice "of any defense against or claim to it on the part of any person." § 673.302(1), Fla. Stat. (1985). The test for "good faith" under the statute is not one of absence of negligence or acting in a commercially reasonable manner; rather, it is a subjective test—whether Plaintiff acted dishonestly or with some actual knowledge of Nicastro's wrongdoing. *Barnett Bank v. Regency Highland Condominium,* 452 So.2d 587, 589-90 (Fla. 4th DCA 1984); *see, Exchange National Bank of Winter Haven v. Beshara,* 236 So.2d 198, 201 (Fla. 2d DCA 1970). The fact that Plaintiff is in the check cashing business does not impose a more stringent standard upon Plaintiff in order to achieve holder in due course status. *Money Mart Check Cashing Center, Inc. v. Epicycle Corporation,* 667 P.2d 1372, 1374 (Col. S.Ct. 1983). In this case, Plaintiff's representative knew nothing of Nicastro's wrongdoing. Nor was there anything about the check itself or the check cashing transaction which gave Plaintiff reason to know of Nicastro's misrepresentation to Cowart. *See,* §§ 671.201(25), 673.304, Fla. Stat. (1985). Based on the foregoing, it is

ORDERED AND ADJUDGED that Plaintiff, CASH-A-CHECK OF SOUTH FLORIDA, INC., recovers from Defendant, SUNSHINE ELECTRICAL CONTRACTORS, INC., $216.20, with $50.00 in court costs, for which let execution issue, with interest at 12% per annum.

DONE AND ORDERED in West Palm Beach, Florida, this 2nd day of December, 1987.